**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | |
|---|---|
| HOMER BERRYHILL, | |
| Movant, | CIVIL ACTION NO.: 2:18-cv-48 |
| v. | |
| UNITED STATES OF AMERICA, | (Case No.: 2:16-cr-11) |
| Respondent. | |

### ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant Homer Berryhill ("Berryhill"), who is currently housed at the Federal Correctional Institution-Low in Yazoo City, Mississippi, filed a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence, as supplemented.  Docs. 1, 6, 8.  Berryhill also filed a Motion for Default and a Motion to File Collateral Estoppel.  Docs. 7, 11.  The Government filed a Response to Berryhill's Motions, to which Berryhill filed a Reply.  Docs. 15, 18.  Berryhill has also filed a Motion for Leave to Amend and a "Supplement" to his § 2255 Motion.  Docs. 21, 23. The Government responded to Berryhill's Motion to Amend, doc. 22, and Berryhill filed a Reply, doc. 24.

For the reasons which follow, I **RECOMMEND** the Court **DENY** Berryhill's § 2255 Motion, as supplemented, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Berryhill a Certificate of Appealability and *in forma pauperis* status on appeal.  I **DENY** Berryhill's Motion for Default, Motion to File Collateral Estoppel, and Motion to Amend.

## BACKGROUND

Berryhill was charged and indicted for conspiracy to possess with intent to distribute and distribute a quantity of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846; and three counts of use of a communication facility, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. United States v. Berryhill, 2:16-cr-11 ("Crim. Case"), Doc. 1. Berryhill and his appointed attorney, Marvin Hicks, III, entered into a plea agreement with the Government, and Berryhill pleaded guilty to each count of the use of a communication facility charges. Crim. Case, Doc. 33. In exchange, the Government agreed to: not object to a recommendation for a three-level reduction for acceptance of responsibility; move to dismiss Count 1 of the indictment (the conspiracy charge) against Berryhill; not file a 21 U.S.C. § 851 notice; and consider whether Berryhill's cooperation, if given, qualifies as "substantial assistance" warranting the filing of a motion for downward departure or a motion to reduce sentence. Id. at 2. The Honorable Lisa Godbey Wood held a change of plea, or Rule 11, hearing, during which Kevin Waters with the Drug Enforcement Agency provided the factual basis for the plea, Judge Wood accepted Berryhill's plea, and Judge Wood directed the United States Probation Office to prepare a pre-sentence investigation report ("PSR"). Crim. Case, Docs. 31, 55. Judge Wood sentenced Berryhill to 144 months' imprisonment, which was comprised of three 48-month sentences, to be served consecutively to each other and to be served consecutively to any sentence the Fulton County Superior Court imposed for a probation revocation in its case number 12SC107125. Doc. 54.

Berryhill has now filed his § 2255 Motion, as supplemented, to challenge his sentence. Docs. 1, 6, 8, 18, 23. The Government has responded. Doc. 15. Berryhill has also filed various

Motions, docs. 7, 11, 21, to which the Government responded.  Docs. 15, 22.  The Court

addresses the parties' contentions.[1]

## DISCUSSION

**I.      Allegations of Court Error**

**A.      Career Offender Status Under the Guidelines**

Berryhill asserts the Court erred in attributing career offender status to him because he

received only probationary sentences for his 2004, 2006, and 2012 sentences for controlled

substances offenses and was not sentenced to a term of imprisonment exceeding one year for his

2007 offense.  Doc. 1-1 at 12–18.  Thus, Berryhill maintains he does not meet the statutory

requirements of the career offender provision of the Guidelines because he was not sentenced to

serve more than a year in prison on any of these four previous convictions.[2]  Id. at 12–13.

Berryhill asserts his "simple possession" prior convictions under Georgia law are not "controlled

substance offense[s]" that could be used to enhance his federal sentence.  Id. at 17.

The Government states the Court properly counted Berryhill's state convictions as career

offender predicate offenses.[3]  Doc. 15 at 23.  Specifically, the Government states Berryhill's

---

[1]      In his § 2255 Motion and supplements, Berryhill conflates and confounds the legal theories he
uses in support of his assertions.  The Court finds the Government's approach and categorization of
Berryhill's arguments to be better organized and uses this structure in analyzing Berryhill's contentions.
Even so, the Court will consider all of Berryhill's contentions, even if they do fit within one of the three
larger categories.  Additionally, the Court does not rely exclusively on the Government's presentation of
Berryhill's claims.

[2]      Berryhill cites to the saving clause of § 2255 and the Armed Career Criminal Act ("ACCA").
Doc. 1-1 at 13–16.  Because Berryhill filed a § 2255 motion, the saving clause has no bearing.  And
because he was not sentenced under the ACCA or the crime of violence provision of the Guidelines, those
provisions and case law addressing them have no bearing.  The Court addresses these provisions no
further.

[3]      The Government also states Berryhill's claims relating to Court and prosecutorial errors as to his
sentencing are procedurally defaulted or are not cognizable under § 2255.  Doc. 15 at 19–22.  Berryhill
asserts many of these claims under the ineffective assistance of counsel rubric.  The Court addresses the

2007 and 2012 convictions for possession with intent to distribute methamphetamine are controlled substance offenses under the career offender provision of the Guidelines, and the Court was permitted to use these two convictions to designate Berryhill as a career offender.  Id. at 23–24.

Section 4B1.1 of the Sentencing Guidelines deems a defendant to be a career offender if he was at least eighteen years old at the time he committed the offense for which he is being sentenced, the offense "is a felony that is either a crime of violence or a controlled substance offense," and he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 4B1.1(a).  "The term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense."  U.S.S.G. § 4B1.2(b).  "[F]acts contained in a" PSR are deemed "to be undisputed and admitted if a party does not assert a specific and clear objection to them before the sentencing court.  The failure to make such a challenge 'to conclusory statements in the PS[R] renders those statements undisputed and permits the sentencing court to rely upon them without error even if there is an absence of supporting evidence.'"  United States v. Kicklighter, 346 F. App'x 516, 519 (11th Cir. 2009) (citations omitted).

The career offender provision of the Guidelines was applied to Berryhill based on his 2007 and 2012 convictions in the Fulton County Superior Court for possession of

---

relative merits of these claims under the "Allegations of Court Error" and "Allegations of Prosecutorial Error" Sections of this Report and offers no opinion as to procedural default or whether these claims are cognizable under § 2255.

methamphetamine with intent to distribute.  PSR, ¶¶ 28, 38, 40.  Both of Berryhill's convictions

under Georgia law involved possession of methamphetamine with intent to distribute.  Id. at

¶¶ 38, 40; Docs. 15-3, 15-4.  The convictions are qualifying "controlled substance offenses"

under § 4B1.1 because they were state law crimes, punishable by at least five years'

imprisonment, for possession with intent to distribute methamphetamine, a controlled substance.

McKenzie v. United States, CV 616-086, CR 615-001, 2017 WL 930146, at *5 n.6 (S.D. Ga.

Jan. 11, 2017) (citing O.C.G.A. § 16-13-30).[4]  It is immaterial Berryhill was not sentenced to

serve more than a year and a day in prison for these convictions.  He faced a term of

imprisonment of more than a year on his previous state court convictions, as the crimes of which

he was convicted were punishable as felony offenses.  Further, the PSR states Berryhill was in

possession of approximately 24 grams of methamphetamine on his 2007 conviction, and this

term of probation was revoked; Berryhill was ordered to serve two years' confinement.  PSR,

¶ 38.  Records for Berryhill's 2012 conviction were not available, according to the probation

officer.  Id. at ¶ 40.  Nevertheless, Berryhill clearly qualifies as a career offender under the

Guidelines based on his 2007 and 2012 Georgia convictions.  These two convictions were for

felony offenses and, under the career offender provision, a defendant need only have two

---

[4]      Section 16-13-30 of the Georgia Controlled Substances Act provides a first offense involving possession with the intent to distribute carries a term of imprisonment of at least 5 years but not more than 30 years.  A second conviction carries a term of at least 10 years' imprisonment but not more than 40 years or life.  § 16-13-30(d).  Berryhill's 2007 and 2012 convictions involved possession with intent to distribute an unspecified amount of methamphetamine, doc. 15-3 at 2–6; doc. 15-4 at 2–6.  The Court was permitted to use his 2007 and 2012 convictions under the career offender provision, especially in light of Berryhill's failure to object to the probation officer's description of both convictions as possession with intent to distribute in the PSR.  Turner v. Warden Coleman FCI (Med.), 709 F.3d 1328, 1336 (11th Cir. 2013), abrogation on other grounds recognized by United States v. Hill, 799 F.3d 1318, 1321 n.1 (11th Cir. 2015).

previous qualifying controlled substance convictions.[5]  In addition, because this designation was not objected to at sentencing, Judge Wood was entitled to rely on the statements contained in the PSR in determining Berryhill's sentence.[6]  For these reasons, the Court should **DENY** this portion of Berryhill's § 2255 Motion.

**B.**      **Use of Information in the PSR Regarding Prior Convictions**

Berryhill avers the Court did not employ any factual findings or use any documents to determine he qualifies as a career offender.  Instead, Berryhill contends, the Court relied solely on information contained in the PSR to determine he qualified as a career offender.  Doc. 1-1 at 19.

In response, the Government asserts the Court could rely solely on the information contained in the PSR relating to prior offenses for Berryhill's career offender designation because he did not challenge the information relating to his previous convictions.  Doc. 15 at 24. The Government also asserts Berryhill admitted he was convicted of possession with intent to distribute methamphetamine in Georgia in 2007 and was sentenced to 10 years to serve, with six months in custody and the balance on probation, and under the same statute in 2012, at which

---

[5]      While Berryhill contends his 2004 and 2006 convictions should not count as qualifying offenses, the PSR does not list relevant convictions for these years.  Crim. Case, Doc. 60 (PSR).  Berryhill was convicted in 2004 of driving under the influence, but this conviction was not assigned any criminal history points.  Id. at ¶ 36.  Berryhill had a 2005 conviction for possession of hydromorphone, methamphetamine, and less than one ounce of marijuana, for which he received probationary sentences, and this was assigned two criminal history points.  Id. at ¶ 37.  It does not appear the Court (or the probation officer) relied on this 2005 conviction as a qualifying controlled substance conviction for career offender purposes, and Berryhill's 2004 driving conviction certainly could not have been used as a qualifying offense.

[6]      Berryhill cites to several cases concerning the violent felony provision of the ACCA, doc. 1-1 at 12, and, thus, these cases are not relevant to the career offender analysis here.  See Mathis v. United States, 136 S. Ct. 2243 (2016); Descamps v. United States, 570 U.S. 254 (2013); Begay v. United States, 553 U.S. 137 (2008), *overruled by* Johnson v. United States, 576 U.S. 591 (2015).

time he was sentenced to 15 years, to be served on probation.  Id.  Accordingly, these convictions are valid predicates for the career offender enhancement.  Id.

The Court was permitted to use Berryhill's 2007 and 2012 convictions under the career offender provision, especially in light of his failure to object to the probation officer's description of both convictions as possession with intent to distribute in the PSR.  Turner v. Warden Coleman FCI (Med.), 709 F.3d 1328, 1336 (11th Cir. 2013), *abrogation on other grounds recognized by* United States v. Hill, 799 F.3d 1318, 1321 n.1 (11th Cir. 2015).  In addition, the Court was not required to make any factual findings to determine Berryhill qualified as a career offender for purposes of § 4B1.1.  See United States v. Gibson, 434 F.3d 1234, 1247 (11th Cir. 2006) (noting district court "must focus on statutory language of crime of prior conviction[s]" to determine whether those convictions are controlled substance offenses within the meaning of the Guidelines and whether those convictions can be used to support application of the career offender provision).  As discussed in the preceding Section, Berryhill's 2007 and 2012 Fulton County convictions qualify as predicate controlled substance offenses under the career offender provision of the Guidelines.  Thus, the Court should **DENY** this portion of Berryhill's § 2255 Motion.

C.      Use of § 843(b) Convictions for Career Offender Purposes

Berryhill contends the Court erred by characterizing his § 843(b) convictions as controlled substance offenses because the conspiracy count underlying those convictions was dismissed against him.  Doc. 6 at 4–5.  Berryhill asserts his base offense level should have been 10 or 12 and, with acceptance of responsibility, reduced to 7 or 9, resulting in a 24- to 30-month sentence "on each count 2, 3, and 4 in the indictment."  Id. at 8.

The Government asserts this claim is procedurally defaulted and not excused and lacks merit. Doc. 15 at 34. The Government notes an element underlying a § 843(b) conviction is the offense was committed by someone who committed an underlying controlled substance offense, and this element is separate and apart from any dismissed conspiracy count elements. Id. at 35. Thus, the Government notes the dismissal of the underlying charge has no bearing on whether Berryhill's § 843 convictions qualify as controlled substance offenses under the career offender provision of the Guidelines.

Section 843(b) provides, in relevant part, "It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony . . . ." In this case, the underlying felony offense was the conspiracy to possess with intent to distribute methamphetamine. As noted above, it is of no moment the Court dismissed the conspiracy charge. The Court could use this conduct in fashioning a sentence against Berryhill and could use the underlying felony offense as a controlled substance offense under the career offender provision of the Guidelines, § 4B1.1. See U.S.S.G. § 4B1.2(b) (defining "controlled substance offense" as a felony offense which prohibits "the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense."). The Court should **DENY** this portion of Berryhill's § 2255 Motion.

### D.    Double Jeopardy

Berryhill contends his separate convictions under § 843(b) violate the prohibition against double jeopardy. Doc. 1-1 at 20. According to Berryhill, his three charges of violating § 843(b) should not have been considered three separate offenses because the three telephone calls were with the same person over the course of six days and involved conduct relating to the conspiracy

count, which was dismissed.  Id. at 28; Doc. 8 at 1.  Berryhill states these three counts should be grouped together and merged into one count with a four-year maximum sentence to run concurrently, entitling him to resentencing.  Doc. 1-1 at 28–29; Doc. 8 at 3.  Berryhill asserts when some or all counts require the same elements of proof, the indictment is "multiplic[i]tous, unless the legislature unambiguously provided for [the] possibility of multiple punishments for the same offense."  Doc. 8 at 2.

The Government avers Berryhill admitted in his plea agreement and at his plea hearing he made three separate telephone calls on three separate occasions (November 28, November 30, and December 3, 2014) to facilitate a conspiracy to distribute and possess with intent to distribute methamphetamine.  Doc. 15 at 26.  In addition, the Government notes § 843(b) expressly provides for a separate offense for each separate use of a communication facility and courts are permitted to impose separate punishments for each offense without violating the double jeopardy clause.  Id. at 26–27.

The Fifth Amendment provides no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]"  U.S. Const. amend. V.  "The Double Jeopardy Clause protects a defendant from (1) a second prosecution for the same offense after conviction; (2) a second prosecution for the same offense after acquittal; and (3) multiple punishments for the same offense."  United States v. Melvin, No. 3:14-CR-00022, 2015 WL 7116737, at *11 (N.D. Ga. May 27, 2015), report and recommendation adopted, 143 F. Supp. 3d 1354 (N.D. Ga. 2015), aff'd, 918 F.3d 1296 (11th Cir. 2017) (citing Jones v. Thomas, 491 U.S. 376, 380–81 (1989)).  If more than one count of the indictment requires proof of a fact the other did not, neither count is subject to dismissal based on the existence of some common facts.  See Blockburger v. United States, 284 U.S. 299, 304 (1932) (holding "[t]he applicable rule is that, where the same act or

transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.").  "Ultimately, the 'dispositive question' [in the Blockburger analysis is] whether Congress intended to authorize separate punishments for the two crimes.'" United States v. Gonzalez, 834 F.3d 1206, 1219 (11th Cir. 2016) (quoting Albernaz v. United States, 450 U.S. 333, 344 (1981)).

Section 843(b) makes it "unlawful for any person [to] knowingly or intentionally . . . use any communication facility in committing or in causing or facilitating the commission of any act . . . constituting a felony . . . ."  In addition, "Each separate use of a communication facility shall be a separate offense under this subsection."  21 U.S.C. § 843(b).  Berryhill admitted his guilt to three separate § 843(b) offenses, and each offense occurred on a separate date.  Even though these telephone calls involved Berryhill and the same person (Mr. Courson), these calls occurred on three separate occasions.  Berryhill was charged with three separate offenses under § 843(b), and his convictions—after entry of a plea to all three counts—do not violate Blockburger, as § 843 provides for separate offenses for each separate use of a communications facility.  United States v. Serrano, 57 F. App'x 12, 16 (2d Cir. 2002) (finding defendant's double jeopardy claim frivolous when he acknowledged in plea he made two separate calls, and § 843(b) "expressly provides" each separate use is a separate offense).  Accordingly, this contention is without merit, and the Court should **DENY** this portion of Berryhill's § 2255 Motion.

### E.    Imposing Consecutive Sentences

Berryhill states this Court erred by imposing three four-year sentences, to run consecutively to each other.  Doc. 1-1 at 31.  Berryhill alleges the Guidelines directed his sentences run concurrently with each other and that his three convictions were to be grouped

together because the conduct involved the same person over the course of a six-day period within the scope of the same conspiracy.  Doc. 6 at 9.  The Government argues the consecutive sentences imposed did not exceed the statutory maximum, as each of the three convictions carried a statutory maximum sentence of four years' imprisonment.  Doc. 15 at 27–28, 29.

Each violation of § 843(b) carries a statutory maximum sentence of four years' imprisonment.  § 843(d)(1).  As discussed further in the following Subsection, the Court did not err in ordering Berryhill's sentence to run consecutively to each other.  The Court should **DENY** this portion of the Motion.

**F.**     **Sentencing Above Statutory Maximum**

As a corollary to Berryhill's assertion regarding the imposition of consecutive sentences, he also argues the Court sentenced him above the statutory maximum sentence by imposing a twelve-year sentence.  Doc. 1-1 at 35.

In response, the Government states Berryhill's three convictions each carried a statutory maximum sentence of four years' imprisonment.  Doc. 15 at 28.  In addition, the Government states § 5G1.2(d) of the Sentencing Guidelines provides, "[I]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment."  Id. at 28–29 (quoting § 5G1.2(d)).  Although Berryhill's Guidelines range was 292 to 365 months, his sentence was capped at the statutory maximum of 144 months' imprisonment, or 48 months on each of his three convictions.  Id. at 29.  Thus, the Government maintains the Court did not exceed the statutory maximum sentence.  Id. at 30.

Here, the Court determined Berryhill's offense level was 35 with a criminal history category of VI, which would result in an advisory Guidelines range of 292 to 365 months' imprisonment.[7]  However, because the statutory maximum under § 843 was four years for each count, the Guidelines range became the statutory maximum sentence, which was significantly lower than the advisory Guidelines range.  Because the statutory maximum under § 843 was 48 months' imprisonment for each count, the Guidelines range became the statutory maximum sentence.  But the statutory maximum was significantly less than the calculated advisory Guidelines range.  Therefore, the imposition of consecutive sentences was consistent with the dictates of § 5G1.2(d) to produce a sentence equal to the total punishment, as determined by the Guideline calculations.  United States v. Butler, 416 F. App'x 856, 860 (11th Cir. 2011).  The imposition of consecutive sentences is consistent with the Guidelines, and, therefore, the Court should **DENY** this portion of Berryhill's Motion.

### G.    Use of Dismissed Conduct to Increase Sentence

Berryhill maintains the Court erred in using conduct relating to the conspiracy charge in sentencing him because the conspiracy count against him was dismissed.  Doc. 1-1 at 36. Berryhill states the Court relied on a constitutionally impermissible factor contained in the PSR by enhancing his sentence.  Id.  Additionally, Berryhill avers the Court could not use the conspiracy conduct as relevant conduct because that conduct was not proven by a preponderance of evidence.  Doc. 18 at 32.[8]

---

[7]    The base offense level under the Guidelines for the offense involving at least 4.5 kilograms of ice is 38.  PSR, ¶ 22 (citing U.S.S.G. §§ 2D1.6, 2D1.1, 2D1.1(c)(1)).  Berryhill received a three-point reduction for acceptance of responsibility, lowering his offense level to 35.  Id. at ¶¶ 29–31.

[8]    Berryhill cites United States v. Watts, 519 U.S. 148, 157 (1997), in which the United States Supreme Court found a sentencing court may consider conduct underlying charges for which a defendant was acquitted "so long at that conduct has been proved by a preponderance of the evidence."  Berryhill

The Government alleges the Guidelines require a court to consider all of a defendant's relevant conduct to fashion a proper sentence, even conduct forming the basis of a count dismissed under a plea agreement.  Doc. 15 at 30.  What is more, the Government states the language in Berryhill's plea agreement informed him the Guidelines calculation would take into account all of his relevant conduct, not just the facts underlying the counts to which he was pleading guilty.  Id. at 30–31.  Further, the Government notes Berryhill represented he understood the Court was free to impose any sentence authorized by law, up to the statutory maximum.  Id. at 31.

"Relevant conduct under the guidelines need not be charged to be considered in sentencing, and it includes all acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction."  United States v. Jokhoo, 806 F.3d 1137, 1141 (8th Cir. 2015) (quoting United States v. Radtke, 415 F.3d 826, 841 (8th Cir. 2005)).  A court considering relevant conduct "must consider 'all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully cause by the defendant.'" United States v. Tillman, 2:17-CR-8, 2017 WL 2728209, at *3 (S.D. Ga. June 23, 2017) (quoting U.S.S.G. § 1B1.3(a)(1)(A)).  In addition, the base offense level "shall be determined on the basis of . . . all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction[.]"  Id. (quoting U.S.S.G. § 1B1.3(a)(2)).  "Courts have consistently held . . . conduct forming the basis of counts . . . dismissed from the indictment pursuant to a plea agreement[] is relevant conduct for sentencing."  McReed v. United States,

---

also cites Nelson v. Colorado, 137 S Ct. 1249, 1257 (2017), in which the Supreme Court found requiring defendants with reversed or vacated convictions to prove by clear and convincing evidence to obtain refund of fees, costs, and restitution payments violates due process.  The Court cannot agree with Berryhill's characterization Nelson overrules Watts or otherwise calls the Watts decision into doubt.  Doc. 1-1 at 20.  Even if the Watts decision had been called into doubt, Berryhill does not establish it applies to him.  What is more, Nelson is simply not applicable in this case.

Nos. CV113-121, CR 111-302, 2014 WL 1238037, at *8, n.4 (S.D. Ga. Mar. 21, 2014) (citing United States v. Watts, 519 U.S. 148, 149–53 (1997) (holding sentencing court may consider facts relating to other charges, even ones of which defendant has been acquitted); United States v. Kennedy, 326 F. App'x 509, 511 (11th Cir. 2009) (holding relevant conduct for sentencing included quantities of drugs that were subject of dismissed counts of indictment); and United States v. Karam, 37 F.3d 1280, 1285 (8th Cir. 1994) ("[A] sentencing court may consider, as relevant conduct under U.S.S.G. § 1B1.3, the conduct charged in dismissed counts.")).

Under the Guidelines, the Court was to consider all of Berryhill's relevant conduct, even the dismissed conspiracy count conduct. In addition, the plea agreement Berryhill and the Government reached informed him the Guidelines calculation would take into account all of his relevant conduct, not just the facts underlying the counts to which he was pleading guilty. Crim. Case, Doc. 33 at 6. What is more, Berryhill stated at the Rule 11 hearing he understood the Court could impose a sentence upon him up to the statutory maximum. Crim. Case, Doc. 55 at 11. Thus, the Court correctly included relevant conduct that was also related to the dismissed conspiracy count in assessing a proper sentence for Berryhill. His contention to the contrary is without merit, and the Court should **DENY** this portion of Berryhill's § 2255 Motion.[9]

---

[9]    Berryhill cites to several irrelevant cases in this portion of his Motion. In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court determined, other than the fact of a prior conviction, any fact increasing the penalty beyond the prescribed statutory maximum must be submitted to the jury and proved beyond reasonable doubt. In Blakely v. Washington, 542 U.S. 296 (2004), the Court found any sentence above the statutory maximum based on a judge's finding violates the right to trial by jury. And in United States v. Booker, 543 U.S. 220 (2005), the Court found the Guidelines are advisory under the Sixth Amendment and noted a court is to consider the Guidelines range but can tailor a sentence in light of other statutory factors. Berryhill was not sentenced above the statutory maximum, and the Court considered the Guidelines and the 18 U.S.C. § 3553 factors in fashioning a sentence for him. Crim. Case, Doc. 55. In addition, "[a] district court's determination of relevant conduct is governed by the preponderance of the evidence standard rather than the more demanding standard of proof beyond a reasonable doubt." United States v. Aenlle, 327 F. App'x 152, 154 (11th Cir. 2009).

### H.    Attribution of Drug Quantity Using "False Facts"

Additionally, Berryhill avers the plea agreement he entered into contains no information regarding any drug amount in the § 843(b) counts or any stipulated drug offenses involving at least 4.53 kilograms of ice.  Doc. 1-1 at 33; Doc. 6 at 2.  Berryhill states the Court's "rounding up" of drug quantity calculation was not based on legal or factual support to find he was involved with at least 4.53 kilograms of ice.  Doc. 6 at 2.  Berryhill states there was no evidence of laboratory work being done on money, methamphetamine, or ice, nor is there any video, audio, or surveillance evidence of him doing hand-to-hand drug transactions or his direct involvement in a drug conspiracy.  Id.

The Government contends the Court's attribution of at least 4.53 kilograms of ice to Berryhill was proper, as this attribution was based on a co-conspirator having told investigators he received ice from Berryhill and had seen him with at least 4.53 kilograms of ice.  Doc. 15 at 33.  In addition, this co-conspirator stated Berryhill had supplied a third person with three to four pounds of ice a week, wiretap intercepts in November and December 2014 confirmed Berryhill was supplying this third person with drugs, and this person affirmed Berryhill sold him a total of six grams of ice.  Id.  Further, the Government notes Berryhill pleaded guilty to three phone count charges, and Berryhill admitted to giving the third person 3 to 4 ounces of ice over the course of 10 months' time on 6 separate occasions.  Id.  Although no formal objection to the drug quantity contained in the PSR was lodged, the Court recognized Berryhill's assertions but noted the drug quantity did not control the Guidelines range—the statutory maximum sentence for each conviction did.  Id. at 33–34.

Based on interviews, the probation officer stated Mr. Jason Bussell and Mr. Bobby Courson identified Berryhill as their source of supply for ice methamphetamine.[10]  PSR, ¶ 16. Bussell stated Berryhill had sold him ice methamphetamine for 10 years' time and had seen Berryhill in possession of as much as 4.53 to 6.8 kilograms of ice at a time.  Courson stated he bought ice from Berryhill as often as twice a month over the course of at least two years' time in quantities ranging from 56.7 to 382.72 grams and estimated he bought a total of 6 kilograms of ice from Berryhill.  Id.  The probation officer noted she was being conservative in attributing 4.53 kilograms of ice to Berryhill, and she did not consider the quantities discussed during the phone calls or combine the quantities Bussell and Courson discussed.  Id.  Additionally, Berryhill was captured on wiretap on several occasions discussing the sale of methamphetamine. Id. at ¶¶ 10–15.  In pleading guilty to three counts of using a communications facility, Berryhill admitted to having used a communication facility on three occasions to further the conspiracy. Crim. Case, Doc. 33 at 2; Doc. 55 at 8–10, 24.  Contrary to Berryhill's contentions, there are facts supporting the Court's attribution of 4.53 kilograms of methamphetamine.  Judge Wood noted at sentencing Berryhill's informal objection to the PSR concerning the weight attributed to him.  Crim. Case, Doc. 54 at 9; PSR Addendum.  However, Judge Wood advised Berryhill "the sentence contemplated by the advisory [G]uidelines due to your plea agreement does not sentence you as a major player."  Crim. Case, Doc. 54 at 8.  It is apparent the Court did not craft a sentence using the weight attributed to Berryhill.  Even if the Court could have done so,

---

[10]     Jason Bussell pleaded guilty to count 1 of the superseding indictment in Case Number 2:14-cr-12 and was sentenced to 151 months' imprisonment.  Bobby Courson pleaded guilty to count 1 of the indictment in Case Number 2:15-cr-10 and was sentenced to 125 months' imprisonment.  PSR at 1–2. During law enforcement officials' investigation of a drug trafficking organization, which concluded in April 2015, Berryhill was identified as a member of the organization who provided ice to Courson and Bussell.  Id. at ¶¶ 5, 6.

however, Berryhill's sentence was capped at the statutory maximum, which was far less than the recommended range for an offender with an offense level of 35 and a criminal history category of VI.  PSR, ¶¶ 62–64.  The Court should **DENY** this portion of Berryhill's § 2255 Motion.

## I.    Criminal History Calculation

Berryhill states the Court erred in its calculation of his criminal history points.  He states his 2012 conviction for possession of methamphetamine is one of his prior convictions, and he received two points for having committed the § 843(b) charges while on probation for the 2012 conviction.  Doc. 6 at 6.  If the Court took into account this prior conviction in reaching his offense level, Berryhill maintains, the Court could not also use the same sentence for criminal history calculation.  Additionally, Berryhill contends he should not have received a one-point enhancement for this conviction because the Court already used his 2012 conviction to give him two points.  Id.

The Government states these contentions are without merit.  Doc. 15 at 36.  The Government states an application note to § 4A1.1(d) explains an extra two points for being on active probation at the time of the offense should be added only when the underlying conviction which led to the probation is a "countable" offense under § 4A1.2.  Id.  Thus, this Court did not err by using the same conviction to include three points under the Guidelines to calculate Berryhill's criminal history score.  Id. at 37.

Under § 4A1.1(c), Berryhill's 2012 Fulton County conviction for possession of methamphetamine garnered one point for his criminal history calculation.  PSR, ¶ 40.  And under § 4A1.1(d), because Berryhill committed the § 843(b) offenses while still under the sentence for the 2012 conviction, two points were added to his criminal history.  PSR, ¶ 42.  Because Berryhill's 2012 conviction was countable under § 4A1.2(c) as a felony conviction and he was

under the sentence for that conviction, the probation officer correctly assigned two points to Berryhill's criminal history calculation in the PSR.  § 4A1.1(d) & Application Note.  What is more, the Court did not take into account Berryhill's prior conviction to establish his offense level, as that was based on the conduct involved in the federal prosecution underlying his § 2255 Motion.  PSR, ¶¶ 22, 28.  Berryhill's contention to the contrary is without merit, and the Court should **DENY** this portion of his Motion.

## II. Allegations of Prosecutorial Error[11]

### A. Supporting Consecutively Run Sentences

According to Berryhill, the Government ran afoul of double jeopardy principles by not grouping the three § 843(b) convictions together and then allowing his sentences on these counts to run consecutively rather than concurrently.  Doc. 1-1 at 31.  In his Reply, Berryhill contends the United States indicted him for facilitating the conspiracy scheme that incorporated the § 843(b) charges and could not be charged separately.  Doc. 18 at 28.

The Government asserts Berryhill admitted through his plea agreement and during his plea hearing he made three separate telephone calls to facilitate a conspiracy.  Doc. 15 at 26. Additionally, the United States contends § 843(b) requires each separate use of a communication facility be counted as a separate offense.  Id. at 26–27.  Thus, the Government states it committed no error in seeking three separate convictions to run consecutively.  Id. at 27.

As discussed in §§ I(D) and (E) above, the Court committed no error in counting each of Berryhill's three convictions under § 843(b) separately, nor did the Court err in sentencing

---

[11]    Many of Berryhill's grounds are slight variations of the same factual challenges.  For instance, Berryhill claims the Court erred by imposing consecutive sentences, the Government engaged in misconduct by supporting the imposition of consecutively run sentences, and Mr. Hicks rendered ineffective assistance by not arguing his sentences should run concurrently.  Thus, there may be significant overlap in the Court's analysis of Berryhill's various grounds.

Berryhill to serve three four-year sentences consecutively.  Likewise, the Government did not engage in misconduct by supporting the Court's imposition of consecutive sentences.  Thus, the Court should also **DENY** this portion of Berryhill's Motion.

  **B.**  **Enhanced Sentence Based on Dismissed Count**

   Berryhill states the Government violated his due process rights by using the <u>Watts</u> decision to justify its use of relevant conduct underlying the dismissed conspiracy count to enhance his sentence.  Doc. 1-1 at 19.  Berryhill argues the Government should not have been able to use the dismissed count during sentencing to determine his offense level.  <u>Id.</u> at 20.  Berryhill also argues the Government must have raised the issue of the conspiracy conduct and fully litigated the issue for the Court to make a determination based on the preponderance of the evidence before the Court could consider this conduct.  Doc. 18 at 33.

   Like its response to Berryhill's claim of Court error on this issue, the Government states the Court was required to consider all of Berryhill's relevant conduct, including any conduct as to dismissed counts, in sentencing him.  Doc. 15 at 30.  Additionally, the Government notes Berryhill's plea agreement contained a provision that informed him the advisory Guidelines range would be based on all of his relevant conduct, not just the conduct underlying the counts to which he was pleading guilty.  <u>Id.</u> at 30–31.  The Government also notes Berryhill's reliance on <u>Nelson</u> and what he claims is the effect on the <u>Watts</u> decision is misplaced.  <u>Id.</u> at 31 n.31.

   As above, the Court properly considered Berryhill's relevant conduct—including the conduct underlying the dismissed conspiracy count—in fashioning Berryhill's sentence.  The Government did not need to justify the use of Berryhill's conduct on the underlying conspiracy offense since, as discussed, the Court was able to consider all relevant conduct in its

consideration of an appropriate sentence.  The Court should **DENY** this portion of Berryhill's

Motion.

>     **C.      Prior Convictions**

Berryhill asserts the Government is attempting to overturn <u>Carachuri-Rosendo v. Holder</u>,

560 U.S. 563 (2010), because it fails to understand he was not sentenced as a recidivist for any

drug possession offenses resulting in punishment of more than a year in prison.[12]  Doc. 18 at 24.

Indeed, Berryhill was not sentenced as a recidivist.  Berryhill's reliance on <u>Carachuri-</u>

<u>Rosendo</u> is misplaced, and this case is not applicable to Berryhill.  In <u>Carachuri-Rosendo</u>, the

United States Supreme Court held the defendant's second conviction under state law for simple

possession was not an "aggravated felony" under the Immigration and Nationality Act if that

sentence has not been enhanced.  560 U.S. at 582.  This portion of Berryhill's filings is without

merit and should be **DENIED**.

**III.   Allegations of Ineffective Assistance of Counsel**

Berryhill's remaining grounds all concern allegations that Berryhill's appointed counsel

rendered ineffective or deficient assistance of counsel.  Criminal defendants have a right to

effective assistance of counsel at all critical stages of the proceedings.  <u>Strickland v. Washington</u>,

466 U.S. 668 (1984).  This right extends to the right to proceed to trial, <u>see</u> <u>Carver v. United</u>

<u>States</u>, 722 F. App'x 906 (11th Cir. 2018), and during sentencing proceedings, <u>Glover v. United</u>

<u>States</u>, 531 U.S. 198, 202 (2001).  This right also extends to the entry of a guilty plea, <u>Hill v.</u>

<u>Lockhart</u>, 474 U.S. 52, 58 (1985), and on appeal, <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th

Cir. 2009).

---

[12]     It appears Berryhill is using the terms "recidivist" and "career offender" interchangeably.

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance.  Id. at 685–86.  The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."  Hill v. Lockhart, 474 U.S. 52, 56 (1985).  There is a strong presumption counsel's conduct fell within the range of reasonable professional assistance.  Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686).  "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'"  LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)).  "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. (internal citation omitted).  "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense."  Id. at 1312–13.  "The likelihood of a different result must be substantial, not just conceivable."  Harrington v. Richter, 562 U.S. 86, 112 (2011).  "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690).  "If a petitioner cannot satisfy one prong, [a court] need not review the other prong."  Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014).  "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's

performance was unreasonable, and that []he was prejudiced by that performance." <u>Demar v. United States</u>, 228 F. App'x 940, 950 (11th Cir. 2007).

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." <u>Strickland</u>, 466 U.S. at 690. "The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." <u>James v. Sec'y, Dep't of Corr.</u>, No. 8:12-CV-1363, 2013 WL 5596800, at *3 (M.D. Fla. Oct. 11, 2013) (citing <u>Waters v. Thomas</u>, 46 F.3d 1506, 1511 (11th Cir. 1995)); <u>Body v. United States</u>, Crim. Action No. 10-0232, 2013 WL 2470660, at *20 (S.D. Ala. June 6, 2013) (citing <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1176 (11th Cir. 2001)).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. <u>Strickland</u>, 466 U.S. at 691–92. In order to establish actual prejudice, a petitioner must show "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different." <u>Armstead v. Scott</u>, 37 F.3d 202, 207 (5th Cir. 1994). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. <u>Strickland</u>, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." <u>Harrington v. Richter</u>, 562 U.S. 86, 112 (2011).

## A.     During Pretrial Proceedings

In his Motion, Berryhill contends Mr. Hicks failed to conduct a "proper investigation having merit[]" because he did not file a motion to suppress evidence regarding the conspiracy charge in count one of the indictment, particularly the statements of his co-conspirators made after the course of the conspiracy. Doc. 1-1 at 21; Doc. 18 at 38–39, 42. Additionally, Berryhill

notes Mr. Hicks did not see what the outcome would be of the pretrial motions he filed.  Doc. 1-1 at 21.  Further, Berryhill maintains Mr. Hicks should have filed a motion to dismiss the indictment because the evidence showed the Government's case was "weak" and lacked "hard facts" indicating Berryhill played a "major part[] within the scope of the alleged conspiracy[] to possess" methamphetamine with intent to distribute.  Id.  Specifically, Berryhill states there is no evidence showing a quantity of ice or methamphetamine recovered from his person or property. Id.  Berryhill notes Mr. Hicks made no pre-trial assertion of a defense on the conspiracy charge under United States v. Supreme Court of New Mexico, (2016), and United States v. Loveland, (9th Cir. 2016).  Id. at 23.

The Government states Berryhill offers nothing concrete in support of his claims regarding the lack of a proper investigation and advising Berryhill to enter into a plea agreement without first having a ruling on pretrial motions.  Doc. 15 at 43.  In fact, the Government states Mr. Hicks mentioned receipt of voluminous discovery materials, which likely would have included the statements of Berryhill's co-conspirators, investigative reports, and documents relating to the contents of Berryhill's phone calls involved in the § 843(b) counts of the indictment.  Id. at 43–44.  Further, the Government notes Berryhill fails to point to any Fourth Amendment violation that would have supported a motion to suppress on the conspiracy charge or how the failure to file a motion to suppress prejudiced him.  Id. at 44.

Berryhill's allegations on these topics are wholly conclusory.  Berryhill fails to explain what sort of investigation should have been performed, what such an investigation would have revealed, or how additional information would have benefitted Berryhill in any way.  Regarding the lack of filing a motion to suppress his co-conspirators' statements, Berryhill does not provide a basis for the filing of such a motion, nor does he allege the lack of a suppression motion drove

his decision to plead guilty.  However, Mr. Hicks did file a motion for a hearing on the admissibility of the co-conspirators' statements.  Crim. Case, Doc. 25.  The Court notes Berryhill's assertion Mr. Hicks was ineffective because he did not await a ruling on this and other pretrial motions prior to Berryhill's entry of a guilty plea.  Once again, Berryhill makes conclusory assertions in this regard.  Because Berryhill's contentions regarding these pretrial circumstances are superficial and conclusory, the allegations do not warrant relief.  Jones v. Fla. Parole Comm'n, 787 F.3d 1105, 1107 (11th Cir. 2015); Saleh v. United States, Case No. 2:16-cv-08150, 2018 WL 2670048, at *4 (N.D. Ala. June 4, 2018) (denying movant's ineffective assistance claims because he presented nothing more than conclusory assertions).  Thus, the Court should **DENY** this portion of Berryhill's § 2255 Motion.[13]

### B.     During Plea Negotiations

According to Berryhill, Mr. Hicks rendered ineffective assistance by advising him to consider and accept a guilty plea in this case.  Doc. 1-1 at 21.  Berryhill states Mr. Hicks "failed to defend him" by advising him to plead guilty in order to avoid a 30-year sentence.  Id. at 23. Further, Berryhill contends his guilty plea was entered into involuntarily as a "result of ineffective assistance of counsel . . . ."  Id. at 36; see also Doc. 18 at 43.  Berryhill states he would have elected to go to trial but for Mr. Hicks' advice to plead guilty and would have received the benefit of United States v. Booker, 543 U.S. 220 (2005), and similar cases.  Doc. 1-1 at 39–40.

---

[13]     The cases Berryhill cites in support of this argument do not apply.  In United States v. Loveland, 825 F.3d 555, 557 (9th Cir. 2016), the court determined the defendant who was not charged with possession of methamphetamine with intent to distribute could not be convicted of that felony charge, no matter how persuasive the evidence was that he committed that crime.  And the Court could not find a case entitled United States v. Supreme Court of New Mexico dealing with conspiracy.  The Court notes Berryhill cites this case for the proposition a conviction for conspiracy to distribute methamphetamine cannot be sustained in the absence of any agreement.  Doc. 1-1 at 23.  Berryhill was not convicted of conspiracy.

The Government notes Berryhill admits he avoided a much longer sentence by entering a plea agreement.  Doc. 15 at 44.  In addition, the Government states Berryhill swore under oath he reviewed the indictment and plea agreement with Mr. Hicks, discussed the charges, knew what the Government would have to prove to convict Berryhill on the three charges to which he pleaded guilty, and he had no complaints about Mr. Hicks' performance.  Id.  Moreover, the Government observes Berryhill would have faced a term of imprisonment in the 292- to 365-month range without a plea agreement, which was the only course he had for a lower sentence due to his criminal history.  Id. at 45.

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary.  United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987). "However, a defendant's guilty plea is not knowing and voluntary if he pled guilty on the advice of counsel and that counsel rendered ineffective assistance because his advice was outside of the range of competence demanded of attorneys in criminal cases."  United States v. Munguia-Ramirez, 267 F. App'x 894, 897 (11th Cir. 2008) (internal citation omitted).  The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary[,] intelligent choice among the alternative courses open to the defendant."  North Carolina v. Alford, 400 U.S. 25, 31 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969).  The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding. Cannon v. Jones, Case No. 3:15CV213, 2017 WL 990583, at *6 (N.D. Fla. Feb. 7, 2017), *report and recommendation adopted*, 2017 WL 988663 (N.D. Fla. Mar. 13, 2017) (citing McMann v. Richardson, 397 U.S. 759, 770–71 (1970)).

25

In addition, a defendant's sworn testimony to the trial judge in open court is presumed to be truthful.  In the context of a plea hearing, the Supreme Court has stated, "[T]he representations of the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity."  Blackledge v. Allison, 431 U.S. 63, 73–74 (1977).  The defendant's representations are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise.  Id.

When "a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain."  Lee v. United States, ___ U.S. ___, 137 S. Ct. 1958, 1965 (2017).  "Instead, when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Spriggs v. United States, 703 F. App'x 888, 890 (11th Cir. 2017) (internal citation and punctuation omitted).  A movant "alleging prejudice with respect to the plea process must demonstrate a reasonable probability that he would have gone to trial rather than enter the plea, but for counsel's errors."  Martinez v. Sec'y, Fla. Dep't of Corr., 684 F. App'x 915, 922 (11th Cir. 2017) (citing Lafler v. Cooper, 566 U.S. 156, 163 (2012)).  "Further, the decision to reject the plea must have been 'rational under the circumstances.'"  Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).  In a plea situation, the focus of inquiry under the performance prong of Strickland is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  Hill, 474 U.S. at 56–57 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).  "Judicial

scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Cannon, 2017 WL 990583, at *10 (citing Strickland, 466 U.S. at 689).

Berryhill and his attorney, Mr. Hicks, were able to negotiate a plea agreement with the Government whereby Berryhill agreed to plead guilty to three counts of use of a communication facility, in violation of 21 U.S.C. § 843(b). Crim. Case, Doc. 33 at 1. In return, the Government agreed to: not object to a three-level reduction recommendation for acceptance of responsibility; not to file a § 851 enhancement against Berryhill; consider whether Berryhill cooperated with the Government to provide substantial assistance warranting the filing of a motion for downward departure; and move to dismiss Count 1 of the indictment. Id. at 2. Berryhill faced a statutory sentence of no more than four years' imprisonment on each count to which he was pleading guilty. Id. at 1. The plea agreement set forth the statutory elements and factual bases of the offenses to which Berryhill was pleading guilty. Id. at 4–5. Berryhill agreed he was guilty of these offenses. Id. at 4. In addition, Berryhill affirmed he had read and reviewed the agreement with his attorney, understood the provisions of the agreement, voluntarily agreed to it, and stipulated to the factual basis as being true and accurate. Id. at 11.

Berryhill appeared before Judge Wood for his Rule 11 proceeding. Judge Wood addressed Berryhill and informed him the purpose of the hearing was to ensure he understood the case that was pending against him, he understood all of the rights he was waiving or giving up by pleading guilty, there was a factual basis for the guilty plea, and, after consultation with Mr. Hicks, pleading guilty was what Berryhill wanted to do. Crim. Case, Doc. 55. Judge Wood inquired whether anyone had made, pushed, or leaned on Berryhill to offer to plead guilty, and

he said no one had done so and pleading guilty was what he wanted to do.  Id. at 3.  After being sworn in, Judge Wood told Berryhill he did not have to plead guilty.  Id. at 6.  Judge Wood also told Berryhill, if he chose to persist in his not guilty plea, he would have the right to: a public and speedy trial by jury; a presumption of innocence that would follow throughout that trial; the assistance of trial counsel; see, hear, confront, and cross-examine the Government's witnesses and evidence; call witnesses on his behalf; and testify himself or remain silent.  Id. at 6–7.  However, Judge Wood cautioned Berryhill he would be waiving these rights if he pleaded guilty and she accepted that guilty plea.  Id. at 7.  Berryhill stated he understood.  Id.  Berryhill also stated he and Mr. Hicks had had the opportunity to talk about the facts and the law pertaining to his case and the indictment filed against him, as well as about the proposed plea agreement and the application of the advisory Sentencing Guidelines in general terms.  Id. at 7–8.  When Judge Wood asked Berryhill whether he was satisfied with Mr. Hicks' representation, he replied he was and had no complaints whatsoever about Mr. Hicks.  Id. at 8.

Judge Wood reviewed the indictment with Berryhill and the essential elements of the crimes to which he was pleading guilty and explained the Government would have to prove those essential elements.  Id. at 8–10.  By pleading guilty, Judge Wood noted Berryhill was admitting the essential elements of the crimes to which he intended to plead guilty were satisfied. Id. at 10.  Judge Wood advised Berryhill of the maximum sentence, as to each count, she could impose.  Id. at 11.  Moreover, Judge Wood explained to Berryhill, in imposing a sentence upon him, she would have to take into consideration the advisory Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.  Id. at 11–12.  In her consideration of his sentence, Judge Wood also explained some of the "major factors" she would have to take into account were

28

Berryhill's criminal history, his role in the offenses, and whether he was truthful and accepted responsibility for his actions.  Id. at 12.

Judge Wood asked the Assistant United States Attorney ("AUSA") to summarize the provisions of the plea agreement.  AUSA Carlton Bourne stated the material provisions were:

> Defendant agrees to plead guilty to Counts 2, 3, and 4 of the indictment.  He agrees to acknowledge at the time of his plea the truth of the factual basis contained in the plea agreement.  He agrees to pay on the date of sentencing any assessments imposed by [t]he Court.  If he cooperates, he agrees to provide full, complete, candid[,] and truthful cooperation, and the Government in its sole discretion will determine whether a motion for downward departure or a motion to reduce sentence should be filed on his behalf.

> The Government also agrees not to object to a recommendation from Probation that the Defendant receive a three-level reduction for acceptance of responsibility.  The Government agrees to dismiss Count 1 as to this Defendant at sentencing.  The Government agrees not to file an 851 enhancement against this Defendant.

> The Defendant waives his right to appeal on any ground with three exceptions, and he agrees to waive his right to collaterally attack his conviction and sentence on any ground with one exception.  That's the extent of the plea agreement, Your Honor.

Id. at 13.  Judge Wood asked Mr. Hicks and Berryhill if AUSA Bourne's summarization of the plea agreement was consistent with the plea agreement Mr. Hicks negotiated and Berryhill signed, and they stated it was.  Id. at 14.  Berryhill also stated he read the plea agreement before he signed it, and Mr. Hicks answered any questions he may have had.  Id.  Berryhill affirmed no one had made him any promises regarding the outcome of his case, other than the provisions contained in the plea agreement.  Id.  Judge Wood asked Berryhill if he had ever been convicted of a felony on a previous occasion, and he admitted he had.  Id. at 15.

Judge Wood then asked Berryhill whether he wished to still plead guilty to Counts 2, 3, and 4 of the indictment because he was in fact guilty of those counts, and he answered in the affirmative.  Id. at 16.  Judge Wood also asked Berryhill whether he understood the rights and

privileges he was waiving if she accepted his plea, and he said he did.  Id.  Judge Wood determined Berryhill's offer to plead guilty was "knowing" and "voluntary."  Id. at 17.  Berryhill agreed.  Id. at 17.

The Government provided a factual basis for Berryhill's plea of guilty by calling Kevin Waters, a task force officer ("TFO") with the Drug Enforcement Agency, to testify.  Id.  TFO Waters stated he was the case agent on the investigation involving Berryhill and previous investigations involving Mr. Bussell and Mr. Courson.  Id. at 18.  As part of the previous investigations, TFO Waters interviewed Mr. Bussell and Mr. Courson, and both of these men implicated Berryhill as being involved with the methamphetamine "business."  Id.  During the course of these investigations, TFO Waters obtained a court-ordered wiretap and, as part of the wiretap, recorded Mr. Courson having phone calls with people, in the course of "obtaining and distributing" methamphetamine, including Berryhill.  Id.  TFO Waters testified about three conversations between Mr. Courson and Berryhill—on November 28, November 30, and December 3, 2014—involving the "attempt to obtain and distribute methamphetamine[.]"  Id. at 19.  On cross-examination, TFO Waters stated Berryhill was Mr. Courson's only source of methamphetamine "during the period of interception."  Id. at 23.

Judge Wood heard from Berryhill again, during which time Berryhill agreed with the Government's factual basis and admitted to the truth of TFO Waters' testimony.  Id. at 24.  Judge Wood accepted Berryhill's plea and adjudged him guilty of Counts 2, 3, and 4.  Id.  Judge Wood advised Berryhill a probation officer would prepare a PSR, and the Court would schedule a sentencing hearing after the PSR was disclosed to the Government and to Mr. Hicks.  Id.

To be clear, Judge Wood informed Berryhill at the outset of the Rule 11 hearing the purpose of the hearing was for him to understand the case that was pending against him, the

rights he was waiving by pleading guilty, the factual basis for his plea, and whether pleading guilty was what Berryhill wanted to do after consultation with his attorney. Id. at 2–3. After telling Berryhill he would be asked to swear under penalty of perjury to tell the truth at his Rule 11 hearing, Berryhill averred no one was forcing him to plead guilty and pleading guilty was what he wanted to do. Id. at 3. Judge Wood discussed the specific rights Berryhill was afforded if he chose to persist with a not guilty plea, and Judge Wood advised Berryhill he would waive those rights if he pleaded guilty and she accepted his plea. Id. at 6–7. Berryhill stated he had spoken with Mr. Hicks about the facts and law of his case, including the plea agreement. Id. at 7–8. Berryhill verified AUSA Bourne's summary of the plea agreement was consistent with the plea he had signed. Id. at 14. Judge Wood asked Berryhill whether he wanted to plead guilty because he was, in fact, guilty of Counts 2, 3, and 4 of the indictment, and he answered in the affirmative. Berryhill declared he understood the rights and privileges he was waiving by pleading guilty and proceeded to do so. Id. at 16. Judge Wood determined Berryhill's guilty plea was knowing and voluntary. Id. at 17. TFO Waters then provided a factual basis for Berryhill's plea, and Berryhill agreed with the Government's factual basis. Id. at 24. Judge Wood accepted Berryhill's plea and adjudged him guilty of possession with intent to distribute cocaine base. Id.

Berryhill's assertion that Mr. Hicks was ineffective during the plea phase and, had it not been for Mr. Hicks' ineffective assistance, he would not have pleaded guilty, is belied by the record and is without merit. If Berryhill had not entered a plea agreement, proceeded to trial on all four counts of the indictment, and been convicted on all counts, he would have faced a Guidelines' range of 292 to 365 months' imprisonment and a statutory maximum of 32 years' (or 384 months') imprisonment on these counts. Doc. 15 at 45; Crim. Case, Doc. 2. Because

Berryhill pleaded guilty to three counts of the indictment, his sentencing of 144 months'
imprisonment was at least 148 months lower than what he ordinarily would have faced had he
not pleaded guilty and received a three-point level reduction for acceptance of responsibility.
What is more, the record before the Court, including the statements Berryhill rendered under
oath and under penalty of perjury, contradicts Berryhill's contentions in his Motion as to Mr.
Hicks' assistance during the plea process and whether Berryhill's plea was entered into
knowingly and voluntarily.  Further, Berryhill has not shown that not accepting the plea would
have been rational under the circumstances, Martinez, 684 F. App'x at 922, and instead offers
conclusory allegations in this regard.  Accordingly, Berryhill is not entitled to his requested
relief, and the Court should **DENY** this portion of Berryhill's Motion.

### C.    During Sentencing

Berryhill also argues his appointed counsel was ineffective or deficient during
sentencing.  Specifically, Berryhill maintains his counsel did not investigate whether, under
Georgia law, simple possession of methamphetamine is a lesser or greater included offense.
Doc. 1-1 at 22.  Berryhill notes Mr. Hicks did not file an objection to the PSR as to his base
offense level calculation, allowing Berryhill to receive a greater sentence for ice rather than the
lesser base offense level for methamphetamine.[14]  Id.  In addition, Berryhill states Mr. Hicks
failed to object to the PSR to challenge the determination his prior state court convictions for
possession of methamphetamine qualified as controlled substance offenses under the career
offender provision because the Court did not use Shepard documents to assist with its
determination.  Id. at 25–26.  In addition, Berryhill notes he was sentenced to probation on his

---

[14]    "Methamphetamine (actual) refer[s] to the weight of the controlled substance, itself, contained in
the mixture or substance."  § 2D1.1(c), Note (B) to Drug Quantity Table.  "Ice" "means a mixture or
substance containing d-methamphetamine hydrochloride of at least 80% purity."  Id. at Note (C).

state court convictions and those convictions cannot constitute prior controlled substance offenses under the career offender provision, and Mr. Hicks was ineffective for failing to make this argument. Doc. 18 at 19–20. Berryhill also states Mr. Hicks did not investigate the statutory definitions of § 843(b), which carries no minimum sentence but only has a four-year maximum. Doc. 1-1 at 26–27. Further, Berryhill maintains Mr. Hicks was ineffective for failing to investigate the claim his sentences should run concurrently. Id. at 27. Berryhill contends Mr. Hicks was ineffective for failing to file a motion during sentencing seeking a minor role reduction on his behalf based on the drug quantity and relevant conduct. Id. at 29–30; Doc. 18 at 51. Berryhill avers Mr. Hicks was ineffective for failing to argue the imposition of three sentences violates double jeopardy concerns, as the multiple offenses share the same underlying conduct. Doc. 18 at 28–30.

In response, the Government states Berryhill's Guidelines range was calculated under a valid Guideline, § 4B1.1, and Berryhill cannot claim counsel was ineffective for failing to raise an unavailing objection. Doc. 15 at 26. Likewise, counsel cannot be deemed ineffective for failing to object to the imposition of three four-year sentences, as the Court did not violate the prohibition against double jeopardy or err in ordering Berryhill's sentences to run consecutively. Id. at 27–28, 30. The Government also contends Mr. Hicks was not ineffective for failing to object to the Court's use of all relevant conduct, and Berryhill cannot show prejudice as to the Court's drug quantity attribution. Id. at 32, 34. Additionally, the Government asserts Berryhill is a career offender because he had two prior controlled substance felony convictions and his § 843(b) convictions are controlled substance offenses due to the underlying conspiracy; thus, Mr. Hicks cannot be deemed ineffective for failing to challenge this designation. Id. at 34–36. The Government states Berryhill's minor role reduction claim is conclusory and he does not

33

show prejudice for this failure.  Id. at 41.  Notably, the Government avers the minor role

reduction would not have applied to Berryhill due to his status as a career offender and, even if

this reduction had been applicable, Berryhill's sentencing range would have been 235 to 293

months' imprisonment, capped at 144 months.  Id. at 45.

As an initial matter, the Court addresses only those arguments not already addressed

under Berryhill's claims of Court or prosecutorial error.  Because the Court has found no error as

to Berryhill's claims regarding his prior convictions and related career offender arguments,

§ 843(b) definitions, whether his sentences should have been imposed to run concurrently, and

double jeopardy concerns, the Court will not restate its analysis of those arguments here.  Even if

Berryhill had shown Mr. Hicks' performance had been deficient as to these grounds, Berryhill

has not shown any prejudice and does not meet both prongs of Strickland.  Duhart v. United

States, 556 F. App'x 897, 898 (11th Cir. 2014) ("If a petitioner cannot satisfy one prong [of

Strickland], we need not review the other prong."); Johnson v. Scott, 68 F.3d 106, 109 (5th Cir.

1995) (noting movant must prove both prongs of the Strickland standard and the failure to prove

either is fatal).  Thus, the Court only addresses Berryhill's contentions regarding simple

possession under Georgia law, the failure to object to his base offense level, the failure to request

documents for Berryhill's prior convictions, and minor role reduction claims under the guise of

ineffective assistance of counsel.

### 1.   *Whether simple possession is a lesser included offense under Georgia law.*

Berryhill argues his counsel did not investigate whether, under Georgia law, simple

possession of methamphetamine is a lesser or greater included offense.  But whether simple

possession is a lesser included offense under O.C.G.A. § 16-13-30 is immaterial.  Berryhill was

not convicted of simple possession; instead, he was convicted of possession with intent to

distribute.  Docs. 15-2, 15-3.  In addition, Berryhill offers nothing in support of this assertion, and the Court cannot discern how Mr. Hicks could have rendered ineffective assistance by not raising this assertion during Berryhill's sentencing.  Jones, 787 F.3d at 1107; Saleh, 2018 WL 2670048, at *4.  Accordingly, the Court should **DENY** this portion of Berryhill's Motion.

### 2.     *Objections related to drug quantity.*

According to the PSR, Berryhill's base offense level was 38 because the offense underlying his § 843(b) charges involved at least 4.5 kilograms of ice, and he was attributed with a conservative estimate of 4.53 kilograms of ice.  PSR, ¶ 22.  Berryhill's offense level was reduced by three levels to 35 based on his acceptance of responsibility and timely notifying the Government he intended to plead guilty.  Id. at ¶¶ 29–31.  Berryhill had a criminal history total of 9 based on convictions for: possession of hydromorphone, methamphetamine, and marijuana; possession of methamphetamine with intent to distribute; possession of a firearm by a convicted felon; and another possession of methamphetamine with intent to distribute.  Id. at ¶¶ 37–41.  Because Berryhill committed the federal offense while serving another sentence, his criminal history point total was raised to 11, and his designation as a career offender put him in criminal history VI rather than V.  Id. at ¶¶ 42–44.  After analyzing the offense characteristics and relevant enhancements, as well as calculating Berryhill's criminal history, the probation officer determined Berryhill had a total offense level of 35 and a criminal history category of VI.  Id. at ¶ 63.  Thus, Berryhill's Guidelines range was 292 to 365 months' imprisonment.  Id.

Judge Wood asked during the sentencing hearing whether Berryhill had read and reviewed the PSR and its brief addendum with Mr. Hicks.  Crim. Case, Doc. 54 at 3.  Berryhill stated he had, and Judge Wood asked if there were any objections to the factual accuracy or the probation officer's application of the Guidelines.  Id.  Berryhill and Mr. Hicks made no

objections but wanted to "make some points for the record . . . ." Id.  After hearing from AUSA

Bourne, who noted Berryhill's career offender status was of import, and the probation officer,

Judge Wood adopted the factual findings and conclusions about the sentencing Guidelines to

which no objections were lodged. Id. at 3–4.  Judge Wood then allowed Berryhill to present

argument and evidence in mitigation of sentence. Id. at 4.  Berryhill addressed Judge Wood,

informing her, "A lot of the information presented in this [PSR] is based off false statements and

contraband, the role of some making these false statements to paint me as a major dealer." Id. at

7.  In response, Judge Wood stated Berryhill's past convictions—many of which involve

methamphetamine—"earned" him the career offender status, and he was fortunate Mr. Hicks was

able to secure a plea agreement that allowed Berryhill to avoid the "high 200-, medium 300-

month range." Id. at 8.  In addition, Judge Wood advised Berryhill his being portrayed as a

major player was immaterial because "the sentence that is contemplated by the advisory

[G]uidelines due to your plea agreement does not sentence you as a major player." Id.

        After consideration of what occurred at the sentencing hearing, the contents of the PSR

and its addendum, the factors set forth in § 3553, and Berryhill's actual conduct and criminal

history, Judge Wood sentenced Berryhill to 144 months' imprisonment, which was comprised of

48-month sentences on all three counts to which he pleaded guilty, to be served consecutively to

each other and to be served consecutively to any term of imprisonment that might be imposed for

the probation revocation in Fulton County case number 12SC107125. Id. at 9–10.  Judge Wood

sentenced Berryhill to the statutory maximum sentences, finding no reason to depart from the

advisory Guidelines and those sentences were "fair considering the nature of the offender and the

nature of the offense." Id. at 10.

It is clear Judge Wood considered Berryhill's statement about the amounts of drugs being attributed to him.[15]  Accordingly, Mr. Hicks cannot be said to have rendered ineffective assistance for failing to raise this objection he did in fact raise and that ultimately had no bearing on Berryhill's Guidelines calculation.  See Glover v. United States, No. CR416-258, 2019 WL 1497062, at *4 (S.D. Ga. Mar. 4, 2019), *report and recommendation adopted*, No. CR416-258, 2019 WL 1495288 (S.D. Ga. Apr. 4, 2019 (noting a firearm enhancement had no effect on movant's sentencing because his criminal history "launched him into career offender territory," and counsel could not have been deficient in failing to raise the point at sentencing).  Thus, Berryhill is not entitled to relief on this ground, and the Court should **DENY** this portion of Berryhill's Motion.

### 3. *Failing to use __Shephard__ documents.*[16]

To assess whether a state conviction qualifies as a controlled substance offense, the Court uses two methods.  First, the Court must assess the state statute under "the categorical approach." United States v. Howard, 742 F.3d 1334, 1345–46 (11th Cir. 2014).  If that assessment does not

---

[15]    Berryhill made his "points for the record[]" regarding the weights being attributed to him, which is the addendum to the PSR.  PSR Addendum.

[16]    Even though Berryhill was sentenced under the career offender provision of the Guidelines and not the ACCA, a sentencing court may still look at Shephard documents and use the modified categorical approach to determine whether a previous conviction counts as a predicate offense.  See United States v. Dover, 710 F. App'x 380, 382 (11th Cir. 2017) ("A sentencing court should look [only] at the elements of the convicted offense [and] not the conduct underlying the conviction, in determining [whether] a prior conviction is a controlled-substance offense under . . . § 4B1.2.") (brackets in original) (citation omitted).  "Where the statutory language encompasses some offenses that would satisfy the statute and others that would not, the sentencing court may look to Shephard documents . . . ." using the modified categorical approach.  Id.  There is no requirement, of course, for a court to look to Shephard documents, particularly when the defendant does not object to the use of prior convictions at sentencing.  Kenon v. United States, Case Nos. 1:12-cr-13, 1:15-cv-61, 2016 WL 1704164, at *2 (M.D. Ga. Apr. 28, 2016), *aff'd*, 722 F. App'x 978 (11th Cir. 2018).  The Court addresses Berryhill's arguments here for completeness and to analyze whether counsel was ineffective for failing to request any Shephard documents at sentencing.

end the inquiry, then Court must determine whether the statute can be assessed under the "modified categorical approach." Id.

Under the "categorical approach," courts compare the elements of the statute forming the basis of the defendant's conviction "with the elements of the 'generic' crime— i.e., the offense as commonly understood." Descamps v. United States, 570 U.S. 254, 257 (2013). Under this approach, "[t]he prior conviction qualifies as a[] . . . predicate [offense] only if the statute's elements are the same as, or narrower than, those of the generic offense." Id. If the statute so qualifies, then this ends the inquiry, and the modified categorical approach is not needed. Howard, 742 F.3d at 1345.

However, if the statute does not qualify as a predicate offense under the categorical approach, the Court must then determine whether it can apply the "modified categorical approach." Id. Courts can use the "modified categorical approach" in those instances "when a prior conviction is for violating a so-called 'divisible statute.'" Descamps, 570 U.S. at 257. A divisible statute is a statute which "sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building or an automobile. If one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not, the modified categorical approach permits sentencing courts to . . . determine which alternative formed the basis of the defendant's prior conviction." Id. To determine which alternative of a divisible statute formed the basis for the prior conviction, the Court can assess a limited class of documents including the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge. Shepard v. United States, 544 U.S. 13, 16 (2005).

If a statute is divisible, the Court can use the <u>Shepard</u> documents to "do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." <u>Descamps</u>, 570 U.S. at 257. If the <u>Shepard</u> documents show the defendant was found guilty under elements of a divisible statute that match elements of the generic offense, instead of those that do not, the prior conviction is an ACCA predicate. <u>Howard</u>, 742 F.3d at 1347. In contrast, "a statute is indivisible if it contains 'a single, indivisible set of elements.'" <u>Id.</u> at 1346 (quoting <u>Descamps</u>, 570 U.S. at 258 & 257 ("defining an indivisible statute as one 'not containing alternative elements'")). "An example of an indivisible statute would be one that criminalizes assault 'with a weapon,' instead of criminalizing assault 'with a gun, a knife, or an explosive.'" <u>Id.</u> (internal citation omitted). "If a statute is indivisible, a court may not apply the modified categorical approach, and that is the end of the inquiry; the prior conviction cannot qualify as a[] . . . predicate [offense] regardless of what any <u>Shepard</u> documents may show." <u>Id.</u>

Section 16-13-30(b) of the Georgia Code is a divisible statute. <u>Spence v. United States</u>, CV417-173, CR415-187, 2018 WL 2307019, at *3 (S.D. Ga. Apr. 24, 2018) (noting Georgia's drug statute is divisible). As noted, Berryhill did not object to the inclusion of his 2007 and 2012 convictions for possession with intent to distribute offenses under Georgia law as felony convictions, and the Court was entitled to use those convictions in classifying Berryhill as a career offender under the Guidelines. <u>Turner</u>, 709 F.3d at 1336; <u>Gibson</u>, 434 F.3d at 1247; <u>see also</u> <u>Spence</u>, 2018 WL 2307019, at *3 (quoting <u>United States v. Ramirez-Flores</u>, 743 F.3d 816, 823 (11th Cir. 2014) ("[A] sentencing court applying the modified categorical approach may consider undisputed facts contained in the PS[R].")). Even if Mr. Hicks' performance were deficient by not requesting <u>Shepard</u> documents for sentencing purposes, Berryhill cannot show

he was prejudiced by this deficiency.  The documents detailing Berryhill's 2007 and 2012 convictions show they were both for possession with intent to distribute methamphetamine, docs. 15-3, 15-4, which are controlled substance offenses under the Guidelines.  Kenon v. United States, Case Nos. 1:12-cr-13, 1:15-cv-61, 2016 WL 1704164, at *2 (M.D. Ga. Apr. 28, 2016), aff'd, 722 F. App'x 978 (11th Cir. 2018) (noting Government need not introduce underlying records for convictions at sentencing if no objection to accuracy of PSR).  Berryhill's Georgia drug convictions are for controlled substances offenses, whether the Court considered the unobjected to listings in the PSR or by use of Shepard documents.  Because Berryhill cannot show he was prejudiced by Mr. Hicks' alleged failure to request Shepard documents, Berryhill does not set forth a successful Strickland claim.  The Court should **DENY** this portion of Berryhill's § 2255 Motion.

### 4.      *Applicability of minor role adjustment.*

Berryhill was sentenced as a career offender under § 4B1.1(a).  Section 3B1.2(b) of the Sentencing Guidelines calls for a two-point decrease in an offender's level if he was a "minor participant in any criminal activity . . . ."  The Eleventh Circuit has repeatedly held career offenders like Berryhill cannot receive a mitigating role adjustment under § 3B1.2.  United States v. Jeter, 329 F.3d 1229, 1230 (11th Cir. 2003) ("Today we make it clear that minor role adjustments are not available to defendants sentenced under § 4B1.1."); see also United States v. Thomas, 808 F. App'x 718, 723 (11th Cir. 2020); United States v. Neely, 683 F. App'x 918, 921 (11th Cir. 2017); United States v. Dawson, 542 F. App'x 803, 805 (11th Cir. 2013); United States v. Jackson, 320 F. App'x 919, 920 (11th Cir. 2009); United States v. Ellwood, 188 F. App'x 935, 941 (11th Cir. 2006).

Because Berryhill was sentenced as a career offender, he was not entitled to a minor role reduction under the Guidelines.  Any such objection Mr. Hicks could have made to this lack of application would have been without merit; thus, it cannot be said Mr. Hicks provided ineffective assistance, and the Court should **DENY** this portion of Berryhill's Motion.

### D.    Appeal

Berryhill contends his counsel "abandoned" him on appeal.  Doc. 1-1 at 29.  Berryhill also contends Mr. Hicks rendered ineffective assistance by not arguing the Court sentenced him above the statutory maximum.  Doc. 18 at 16.  Berryhill filed a notice of appeal, and Mr. Hicks filed an Anders brief and a motion to withdraw.[17]  Doc. 15-1.  In response, Berryhill submitted a pro se brief and argued Mr. Hicks was ineffective at the plea and sentencing phases of the criminal prosecution, the Court impermissibly used two prior convictions to apply the career offender enhancement, the Government attributed an inaccurate drug quantity to him and Mr. Hicks failed to object, and the Government breached the plea agreement by failing to notify him of the applicability of the career offender provision and Mr. Hicks did not object.  Doc. 15-2.

To the extent Berryhill argues his counsel's performance on appeal was deficient, such a claim is "governed by the same standards applied to trial counsel under Strickland."  Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009).  "A defendant can establish ineffective assistance of appellate counsel by showing: (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal."  Shere v. Sec'y Fla. Dep't of Corr., 537 F.3d 1304, 1310 (11th Cir. 2008) (citing Smith v. Robbins, 528 U.S. 259, 285–86 (2000)).  "Appellate counsel is not ineffective for failing to raise claims reasonably

---

[17]      An Anders brief is filed on appeal when counsel opines there are no meritorious issues to raise on appeal.  See Anders v. California, 386 U.S. 738, 744 (1967) ("[I]f counsel finds [the defendant's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw.").

considered to be without merit." Jones v. Sec'y, Dep't of Corr., 487 F. App'x 563, 568 (11th Cir. 2012) (citing United States v. Nyhuis , 211 F.3d 1340, 1344 (2000)). "An attorney is not required under the Constitution or the Strickland standards to raise every non-frivolous issue on appeal." Brown v. United States, 720 F.3d 1316, 1335 (11th Cir. 2013) (citing Jones v. Barnes, 463 U.S. 745, 754 (1983) ("Nothing in the Constitution or our interpretation of that document requires an appellate attorney to raise every 'colorable' claim suggested by a client.")). "Trial counsel's failure to make a meritless argument is not ineffective assistance of counsel." United States v. Hirmer, No. 3:08CR79, 2018 WL 4625652, at *12 (N.D. Fla. Aug. 7, 2018), *report and recommendation adopted*, 2018 WL 4621822 (N.D. Fla. Sept. 26, 2018).

Mr. Hicks filed an Anders brief with the Eleventh Circuit.  The Eleventh Circuit panel agreed with Mr. Hicks' "assessment of the relative merit of the appeal . . . ." United States v. Berryhill, 710 F. App'x 434 (11th Cir. 2018).  The Eleventh Circuit's "independent examination of the entire record" revealed "no arguable issues of merits," and it affirmed Berryhill's convictions and sentences. Id.  Berryhill's contentions raised with the Eleventh Circuit were reasonably considered to be without merit, and Mr. Hicks' failure to raise these issues on appeal cannot be considered ineffective.  Berryhill fails to demonstrate, had Mr. Hicks raised the contentions Berryhill raised on appeal, the Eleventh Circuit would not have affirmed Berryhill's convictions and sentences.  Thus, the Court should **DENY** this portion of Berryhill's Motion.

In sum, Berryhill has shown no reason to vacate, set aside, or correct his sentence or conviction.  The Court should **DENY** Berryhill's § 2255 Motion in its entirety.

## IV.  Berryhill's Motion for Default Judgment

Berryhill avers the Government should be sanctioned for failing to provide the Court with any Shepard or Taylor documents at sentencing, resulting in the Government's waiver of any

argument for a career offender enhancement.  Doc. 7 at 1.  Berryhill states the Government

committed fraud by informing the Court he had five prior convictions without producing

evidence of the same at sentencing.  Id. at 2.  In addition, Berryhill opines the Government

should not be allowed to rely on documents used in opposition to his § 2255 Motion it should

have provided much earlier.  Id.  Berryhill argues the Court should not grant any more extensions

for response to his § 2255 Motion, and the Government should not "get another bite at the career

offender apple."  Id. at 3.

The Government responds Berry's Motion should be denied because a default judgment

is not contemplated in § 2255 proceedings.  Doc. 15 at 48.  The Government also contends

default judgment cannot be entered against the United States absent sufficient evidence to

support a claim on the merits.  Id.  Moreover, the Government notes it filed a timely and

thorough response to Berryhill's § 2255 Motion and supplements.  Id.  Finally, the Government

states any request for sanctions should be denied as unsupported.

The entry of default is not contemplated in habeas corpus proceedings.  Latif v. Gartland,

Civil Action No. 5:17-cv-69, 2017 WL 4227403, at *1 n.2 (S.D. Ga. Aug. 28, 2017), adopted by

2017 WL 4209730 (Sept. 19, 2017); see also Aziz v. Leferve, 830 F.2d 184, 187 (11th Cir. 1987)

(finding a default judgment is not contemplated in habeas corpus cases); Goodman v. Keohane,

663 F.2d 1044, 1048 n.4 (11th Cir. 1981) (rejecting petitioner's argument the government's

tardiness in responding to petition entitled him to habeas relief); Cruz v. United States, 1:13-CV-

1843, 1:11-CR-0261, 2013 WL 6145266, at *1 (N.D. Ga. Oct. 23, 2013) (recognizing default

judgment is not contemplated in § 2255 proceedings), adopted by 2013 WL 6097570 (N.D. Ga.

Nov. 20, 2013).  The Court, therefore, **DENIES** Berryhill's Motion for Default.  Doc. 7.

**V.      Berryhill's Motion for Collateral Estoppel**

In this Motion, Berryhill asks this Court to dismiss his indictment, convictions, and sentences and to prevent the Government from re-indicting him.  Doc. 11 at 1–2.  Berryhill contends the Government should not be allowed to present any further argument or documentation relating to his prior convictions and his § 843(b) convictions in this Court.  Id. at 2–3.  Berryhill asserts the Government had ample opportunity to raise any issues during sentencing or on direct appeal.  Id. at 3.  Berryhill is not entitled to relief, the Government posits, because none of the issues he raises have been presented in a prior proceeding, except, perhaps the claimed error on appeal regarding whether the Court erred by using two prior convictions to apply the career offender provision.  Doc. 15 at 49, 21–22.

"Collateral estoppel requires that '(1) an identical issue was presented in the prior proceeding; (2) the issue was a critical and necessary part of the prior proceeding; (3) the issue was fully and fairly litigated in the previous proceeding; (4) the parties in the two proceedings were identical; and (5) a final decision was rendered by a court of competent jurisdiction.'" United States v. Robinson, No. 12-20319-CIV, 2012 WL 3984786, at *4 (S.D. Fla. Sept. 11, 2012) (quoting Bryant v. CEO DeKalb Co., 575 F.3d 1281, 1303 (11th Cir. 2009)).

Berryhill's assertion the Government is estopped from raising issues or evidence relating to the claims he raised in his § 2255 Motion is misplaced.  Berryhill does not show he is entitled to relief based on any of the collateral estoppel requirements, let alone all five, as required. Thus, the Court **DENIES** Berryhill's Motion.  Doc. 11.

**VI.     Berryhill's Motion for Leave to Amend/Correct**

Berryhill seeks to amend his § 2255 Motion to include an ineffective assistance claim based on Mr. Hicks' failure to request a downward variance based on Berryhill's acceptance of

responsibility.  Doc. 21 at 3.  Berryhill maintains this amendment relates back to his original

§ 2255 Motion, as supplemented.  Id. at 4.

    The Government contends Berryhill wrongly states it does not oppose his amendment.

Doc. 22 at 3.  Even though Berryhill raised numerous ineffective assistance claims in his original

filings, the Government states Berryhill's requested amendment does not relate back to the

original assertions.  Id.  However, even if his newly asserted claim did relate back, it is without

merit.  Of note, the Government avers Mr. Hicks argued at sentencing Berryhill's drug quantity

was exaggerated by others, he was not found to be in possession of any contraband, and he did

not direct his sister to transport any contraband.  Id. at 6.  Mr. Hicks also argued Berryhill had

removed himself from the illegal conduct at issue before he was indicted and obtained vocational

certificates to improve his employment opportunities.  Id.  The Government posits his attorney

made these statements with the intent to persuade the Court to downwardly depart, and the Court

considered these statements.  Id.

    Rule 15(a) permits a party to amend a pleading once "as a matter of course" within 21

days after serving it or after service of a responsive pleading.  Fed. R. Civ. P. 15(a).  Otherwise, a

party may amend a pleading "only with the opposing party's written consent or the court's

leave."  Id.  Rule 15(c) allows an amended pleading to relate back to the date of the original

pleading if, in relevant part, it "asserts a claim or defense that arose out of the conduct,

transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R.

Civ. P. 15(c)(1)(B).  "In the habeas context, it is not enough for the later pleading to concern the

same legal proceeding as the original motion."  Wilcher v. United States, 808 F. App'x 938,

940–41 (11th Cir. 2020) (citing Mayle v. Felix, 545 U.S. 644, 662–64 (2005)).  "Rather, to relate

back, the original and amended pleadings must 'state claims that are tied to a common core of operative facts.'" Id. (quoting Mayle, 545 U.S. at 664).

Berryhill's new claim does not relate back to his original § 2255 Motion.  In his original Motion, as supplemented, Berryhill set forth various assertions of ineffective assistance of counsel by his appointed attorney.  Docs. 1, 1-1, 6, 8, 18.  While it is true some of Berryhill's original claims concern ineffective assistance of counsel at sentencing, the proposed amended claim involves additional and different facts and implicates an entirely different legal framework. Berryhill's attempt to amend his § 2255 to set forth another ineffective assistance claim at sentencing does not relate back to his original filings and is impermissible.  Thus, the Court **DENIES** Berryhill's Motion to Amend.

Even if the Court were to find Berryhill's proposed amendment proper, he would still not be entitled to his requested relief.  At sentencing, Judge Wood considered the Addendum to the PSR in which Mr. Hicks stated other people charged in the conspiracy falsely claimed Berryhill dealt in larger quantities than he actually did and exaggerated their relationships with Berryhill, Berryhill did not ask his sister to carry any contraband on his behalf, and Berryhill had not been found in possession of methamphetamine or other contraband since 2012.  PSR Addendum. However, Judge Wood found no reason to depart or vary from the sentence the Guidelines contemplated.  Crim. Case, Doc. 54 at 10.  Any contention Mr. Hicks was ineffective by failing to request a downward variance is without merit.  In addition, the probation officer gave Berryhill benefit of three-point decrease for his acceptance of responsibility.  PSR, ¶¶ 29–30.

VII.    **Leave to Appeal *in Forma Pauperis* and Certificate of Appealability**

The Court should also deny Berryhill leave to appeal *in forma pauperis*.  Though Berryhill has not yet filed a notice of appeal, it would be appropriate to address these issues in

the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party

proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is

filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not

taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context

must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691

(M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous

claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or

argument is frivolous when it appears the factual allegations are clearly baseless or the legal

theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v.

Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good

faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x

321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001));

see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D.

Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order

in a habeas proceeding unless a certificate of appealability is issued.  Pursuant to Rule 11 of the

Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability

when it enters a final order adverse to the applicant."  A certificate of appealability may issue

only if the applicant makes a substantial showing of a denial of a constitutional right.  The

decision to issue a certificate of appealability requires "an overview of the claims in the habeas

petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336

(2003).  In order to obtain a certificate of appealability, a petitioner must show "that jurists of

reason could disagree with the district court's resolution of his constitutional claims or that

jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis of Berryhill's Motion and other filings and the Government's Responses and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Berryhill a Certificate of Appealability, Berryhill is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Berryhill's § 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Berryhill a Certificate of Appealability and *in forma pauperis* status on appeal. I **DENY** Berryhill's Motion to Amend, Motion for Default, and Motion for Collateral Estoppel.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in a filing must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 23rd day of July, 2021.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA